```
 1              IN THE UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION
 2

 3   JAMEKA ELEAZER,              )(
         PLAINTIFF,                )(
 4                                 )(
     VS.                           )( CIVIL ACTION NO.124CV777DII
 5                                 )(
     ORACLE AMERICA, INC.,         )(
 6       DEFENDANT.                )(

 7   ********************************************************

 8               ORAL AND VIDEOTAPED DEPOSITION OF

 9                       GARRETT MILLER

10                       MARCH 28, 2025

11                     (Reported Remotely)

12   ********************************************************

13

14

15

16            ORAL and VIDEOTAPED DEPOSITION OF

17   GARRETT MILLER, produced as a witness at the instance

18   of the Plaintiff, and duly sworn, was taken in the

19   above-styled and numbered cause on the 28th day of

20   March 2025, from 10:11 a.m. to 2:12 p.m., before ERIKA

21   WILLIAMS in and for the State of Texas, reported by

22   machine shorthand, via Zoom, pursuant to the Federal

23   Rules of Civil Procedure and the provisions stated on

24   the record or attached hereto.

25
```

EXHIBIT 2



```
 1                      APPEARANCES

 2   FOR THE PLAINTIFF:

 3        MR. MATT BACHOP, ESQ.
          DEATS DURST & OWEN, PLLC
 4        8140 N Mopac Expy, Suite 4-250
          Austin, Texas 78759
 5        512.474.6200
          mbachop@ddollaw.com
 6
     FOR THE DEFENDANT:
 7
          MR. EDWARD M. "TED" SMITH, ESQ.
 8        CORNELL SMITH MIERL BRUTOCAO BURTON, LLP
          1607 West Avenue
 9        Austin, Texas 78701
          512.328.1541
10        tsmith@cornellsmith.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25        Q.    And one of the things that we've said in the
```



1  lawsuit is that Jameka was the only black employee on
2  that team.
3                Do you agree with that?
4      A.    Yes, I believe that's correct.
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



1
2
3
4
5
6
7
8
9
10
11      Q.   Did you ever participate in phone calls or
12   meetings that Jameka held with either her field reps or
13   customers?
14      A.   I believe so.  I don't remember them
15   specifically -- any specific conversations at this time.
16   But I -- I did that with all of my reps.
17      Q.   Okay.  And understanding -- you said you don't
18   remember any specifically.  Could you ballpark how many
19   you think you sat in on?
20      A.   I -- I really don't think I could make an
21   estimate right now, just given the time that it's been
22   and I don't want to misstate any number.
23
24
25



21    Q.    And was your impression that on those three
22 accounts the field teams were taking the lead?
23    A.    That was my impression for most, if not all,
24 of Jameka's accounts at the time.
25



12  Q.  So I've been doing this a long time now, and
13  I've seen a lot of PIPs over the years.  And almost
14  every single one has a specific time period they'll last
15  for.  Usually 30, 60, or 90 days, and measurable goals
16  that need to be met within the time period.
17          Is that your experience with PIPs too?
18  A.  This is the only PIP I've ever issued.  I've
19  never been issued one myself.  I've never issued one to
20  another employee besides Jameka.  So this is the only
21  official PIP I've really seen.



12   Q.   And it's true that the American Eagle renewal
13  that she was working on closed very shortly after she
14  was fired, right?
15   A.   Yes, I believe that deal was booked late on
16  May 31st, the last day of the fiscal year.
17   Q.   And you knew it was going to close on
18  May 31st, right?
19   A.   No.  It actually was -- I believe it was my
20  last deal for the quarter.  And if I remember correctly,
21  there was issues with them providing a purchase order,
22  which is required.  I think we had to go through a
23  purchase order exemption process.  We were definitely
24  working towards closing and that was the goal.  I don't
25  know that I would -- if you had asked me at 8:00 a.m.



1  May 31st, if I had to bet on it, I don't know -- I don't
2  think I would have said, I'm 100 percent confident in
3  this closing.
4      Q.   Okay.  You knew it was a substantial
5  possibility, right?
6      A.   Yeah.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



```
 1
 2
 3
 4
 5
 6
 7
 8     Q.    And who -- you said you thought the American
 9  Eagle deal was largely field-driven.  Who was the field
10  rep on that?
11     A.    I think the HSM field rep was Hank
12  Bergstresser, who I mentioned earlier.  There was also a
13  renewal rep, because this was a renewal deal.  I don't
14  remember who the specific renewal rep was.
15     Q.    And you know that Mr. Bergstresser's
16  impression was not that he was doing all the work and
17  Jameka was just kind of riding his coattails, right?
18          MR. SMITH:  Objection; form.
19     A.    I don't know what his impression was.  I don't
20  think I ever discussed it with him.
21     Q.    (BY MR. BACHOP)  Oh, you never saw the
22  letter that he wrote rebutting that idea that he was
23  doing all the work?
24     A.    I remember Jameka showing me a note from him.
25  I don't remember it specifically being around this deal
```



800.211.DEPO (3376)
EsquireSolutions.com

```
 1   or even American Eagle.  Again, I would need to see the
 2   note again to refresh my memory.
 3        Q.   Did Jameka have the lowest sales numbers on
 4   the team at the time she was fired?
 5        A.   I don't remember that.
 6
 7
 8
 9
10        Q.   Was that important to you to find one or more
11   metrics where she was ranked the lowest?
12        A.   No.
13
14
15
16
17
18
19
20
21
22
23
24
25
```



```
 1              IN THE UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION
 2
    JAMEKA ELEAZER,              )(
 3       PLAINTIFF,               )(
                                  )(
 4  VS.                          )(  CIVIL ACTION NO.124cv777
                                  )(
 5  ORACLE AMERICA, INC.,         )(
         DEFENDANT.               )(
 6

 7             ORAL AND VIDEOTAPED DEPOSITION OF

 8                      GARRETT MILLER

 9                  REPORTER'S CERTIFICATION

10                     March 28, 2025

11
            I, ERIKA WILLIAMS, in and for the State of
12  Texas, hereby certify to the following:

13          That the witness, GARRETT MILLER, was duly
    sworn by the officer and that the transcript of the
14  oral deposition is a true record of the testimony
    given by the witness;
15
            I further certify that pursuant to FRCP
16  Rule 30(f)(1) that the signature of the deponent:

17          _X_ was requested by the deponent or a party
    before the completion of the deposition and that the
18  signature is to be before any notary public and
    returned within 30 days from the date of receipt of
19  the transcript.  If returned, the attached Changes and
    Signature Page contains any changes and the reasons
20  therefor;

21          ___ was not requested by the deponent or a
    party before the completion of the deposition.
22
            I further certify that I am neither counsel
23  for, related to, nor employed by any of the parties or
    attorneys in the action in which this proceeding was
24  taken, and further, that I am not financially or
    otherwise interested in the outcome of the action.
25
```



1   Further certification requirements pursuant
2   to Rule 203 TRCP will be certified to after they have
3   occurred.
4       Certified to by me this 9th day of April,
5   2025.

*Erika Williams*

ERIKA WILLIAMS
Notary No. 13517248-0
Expiration Date: 11-15-2028
Esquire Deposition Solutions
Certified Court Reporters
Firm Registration No. 286
1700 Pacific Avenue, Suite 1000
Dallas, Texas   75204

