IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **JAMEKA ELEAZER,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No: 1:24-cv-00777-DII |
| | § | |
| **ORACLE AMERICA, INC.** | § | |
| Defendant. | § | |

### REPLY IN SUPPORT OF DEFENDANT ORACLE AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT

Defendant Oracle America, Inc. ("Defendant" or "Oracle"), respectfully files this, its Reply in Support of Defendant's Motion for Summary Judgment [ECF No. 14] (the "Motion"), in response to Plaintiff Jameka Eleazer's ("Plaintiff" or "Ms. Eleazer") Response [ECF No. 15] (the "Response").

There is no genuine issue of material fact to sustain any of Plaintiff's causes of action, and therefore the Court should grant Defendant's Motion for Summary Judgment in its entirety.

**I.    Ms. Eleazer Fails to Establish a Prima Facie Case of Discrimination.**

**a. Ms. Eleazer does not identify a similarly situated employee outside of her protected group (Black) who was treated more favorably.**

In her Response, Plaintiff confirms that she was not replaced outside of her race, and therefore she bears the burden to show that she was treated differently than other similarly situated employees because of her race in order to meet her prima facie case and survive summary judgment. As the Fifth Circuit has held, this requires Plaintiff to identify at least one co-worker outside of her protected group (Black) who was treated more favorably "under nearly identical circumstances." *Wilkerson v. Parish*, No. 21-30716, 2025 U.S. App. LEXIS 11962 at *8 (5th Cir. May 16, 2025), citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). Plaintiff

fails to do so— nor can she, as the evidence clearly establishes that Plaintiff had the lowest overall sales attainment and the lowest overall pipeline generation numbers on her team.

### i. *Plaintiff provides no evidence that her PIP was based on inaccurate data or unattainable goals.*

In her response, and without any supporting evidence, Plaintiff claims that her PIP was based on "inaccurate numbers and unattainable goals." Response, p. 4. First, it should be noted that Plaintiff actually admitted during her deposition that the sales attainment numbers in her PIP were accurate. (Motion, its Ex. D at 76:5-10). Second, there is no evidence to support Plaintiff's allegation that any of the numbers or goals for which she was held accountable were inaccurate or unattainable in any way, nor that Mr. Miller ever "told her" this as Plaintiff alleges. To the contrary, the evidence establishes that Mr. Miller (Plaintiff's first-level manager), Ms. Levitt (Plaintiff's second-level manager), and Ms. Choi (the designated HR partner for Plaintiff's team) all determined that the numbers and goals were accurate and attainable, and that the PIP was correctly issued. (Motion, its Ex. A ¶ 9; Ex. B ¶ 7; Ex. C ¶ 3, 5). Moreover, and at the risk of repetition, the numbers and goals for which Ms. Eleazer was held accountable were the same as those for everyone else on her team. (Motion, its Ex. A at ¶ 15). Accordingly, there is simply no evidence that Ms. Eleazer was terminated based upon either "inaccurate numbers" or "unattainable goals."

### ii. *The evidence establishes that Plaintiff's performance was not "average".*

As demonstrated in Oracle's Motion for Summary Judgment, and contrary to the unsupported claims in Plaintiff's Response, Plaintiff's performance did not "oscillate[] between average and slightly above average." Response, pg. 6. Instead, Plaintiff ranked last on her team for Fiscal Year 2023 for both sales attainment and pipeline generation—two key metrics upon

which Oracle measures an ASR's performance. (Motion, its Ex. A ¶ 14). It is particularly notable that Plaintiff fails to even mention or address the deficient pipeline generation numbers in her Response. This is likely because the evidence shows that her pipeline generation numbers were nowhere close to "average" or "typical" as compared to the generation numbers of the rest of members on her team. Indeed, Ms. Eleazer achieved only an average of 24% of her pipeline generation goals for Fiscal Year 2023, which was nearly 40% less than any other ASR on her team as evidenced by their following quarterly pipeline generation percentages: AH (62%), AS (98%), AW (61%), JW (120%), JL (62%). (Motion, Ex. A ¶ 14). Moreover, as set forth in Oracle's Motion, Ms. Eleazer's poor pipeline generation numbers were key indicators for her managers that she was not taking the steps necessary to improve her sales numbers despite being counseled on the need to do so on multiple occasions, including in her Fiscal Year 2022 annual evaluation, in the regular meetings that Mr. Miller had with Ms. Eleazer in 2023, and finally in her PIP. (Motion, its Ex. A ¶ 3, 10-12).

Further, Ms. Eleazer's focus on her sales attainment "ranking" for each quarter distorts the facts because it does not take into account the overall results for the year. Response, p. 5. Notably, some ASR's substantially overachieved in certain quarters, which translated to them having much higher overall attainments than Plaintiff for Fiscal Year 2023 despite having some off quarters. (Motion, its Ex. A ¶ 14). The undisputed evidence establishes that every ASR on Ms. Eleazer's team with the exception of JL achieved at least 60% of their sales attainment goal for Fiscal Year 2023, and two ASR's achieved over 100% of the goal. (*See id.*). Meanwhile, regardless of her "ranking" in each quarter, Ms. Eleazer ended up ranked last on her team for total sales attainment for Fiscal Year 2023, as she only achieved 37% of her goal for the year. (*See id.*).

3

And contrary to Plaintiff's unsupported allegation that Defendant "manipulated" the final Fiscal Year numbers by terminating her before the sale that closed shortly thereafter, the undisputed evidence shows that this additional sale would not have changed Defendant's decision to terminate Ms. Eleazer. Even assuming that Plaintiff had received credit for this additional sale, Plaintiff still would have ranked second to last for overall sales attainment for Fiscal Year 2023[1] and would have only achieved approximately 25% of her sales goal for Q4. (*See id.*). Moreover, the decision to terminate Ms. Eleazer was based not on just her poor overall sales attainment (which still would have been the second worst on her team), but also because she had the worst pipeline generation numbers of anyone on the team, which indicated to her managers that she was not engaging in the necessary activities to adequately increase her sales attainment numbers. Accordingly, Mr. Miller and Ms. Levitt both testified that the additional sale would not have had a meaningful enough impact on her numbers to make a difference in their decision to terminate Ms. Eleazer. (Ex. A to Reply at 63:19-64:4; Ex. B to Reply at 112:12-113:7). As such, there is no competent summary judgment evidence that Defendant "manipulated" Ms. Eleazer's performance numbers in any way based upon her race.

### iii. The undisputed evidence shows that Oracle takes consistent action against employees regardless of their race.

In a further failed attempt to turn around the undisputed evidence that Defendant took similar disciplinary action in a nearly identical circumstance against a Hispanic employee as somehow establishing that Defendant acted discriminatorily against Plaintiff because she is Black, Plaintiff grossly misstates the applicable legal standards. Response, pp. 7-8. The applicable legal standard that Plaintiff must meet to establish a prima facia case is not that she was treated differently than other "non-White employees"—rather, she must show that **non-Black** employees

---

[1] This accounts for the deal being approximately $60,000 as alleged by Plaintiff in her Response.

4

were treated differently under nearly identical circumstances. *Belton v. Geo Grp., Inc.*, No. 21-30144, 2021 U.S. App. LEXIS 36150, at *9 (5th Cir. 2021) (Plaintiff "must show . . . that he was treated less favorably than a similarly situated comparator *outside the protected class*.") (emphasis added); *Brown v. Fed. Express Corp.*, No. 3:16-cv-01456-M (BT), 2019 U.S. Dist. LEXIS 48069, at *12-13 (N.D. Tex. 2019) (Plaintiff "fails to identify a proper comparator—an individual of a different race and color than him 'under nearly identical circumstances' who was treated more favorably.") Accordingly, Plaintiff's argument misses the mark—the undisputed fact that Oracle treated a comparator who was not Black in a similar manner under nearly identical circumstances simply serves as further evidence that Oracle does not discriminate against its employees on the basis of race.[2] And because Plaintiff has failed to rebut this with evidence of any non-Black comparator who was treated differently under nearly identical circumstances as Plaintiff, she has failed to establish a prima facie case for discrimination and her claim should be dismissed.

### iv. *There is no evidence that Ms. Eleazer was treated worse than other team members.*

Aside from Plaintiff's subjective belief, there is no competent summary judgment evidence to show that she was ever "belittled", "micromanaged", "pestered", asked to provide proof or verification of matters that others on the team were not, or that Mr. Miller ever "changed numbers on her sales deals without telling her".

### v. *Mr. Miller maintained performance logs on employees in addition to Plaintiff.*

As set forth in his deposition testimony and declaration, Mr. Miller maintained performance logs on employees in addition to Plaintiff, which were contained on a spreadsheet.

---

[2] Moreover, Plaintiff's argument makes no sense because if Oracle had not terminated Plaintiff's comparator, Plaintiff would have been able to cite to their continued employment to support her argument that Plaintiff was treated differently than an employee of Hispanic race with nearly identical performance issues to establish her discrimination claims.

(Ex. C to Reply; Ex. B to Reply at 40:13-41:2). In her Response, Plaintiff attempts to insinuate that these statements lack credibility because Oracle was unable to produce such logs in response to Plaintiff's requests for production. Response, p. 4. However, these additional logs could not be produced because Mr. Miller received a new work laptop in August 2023, and during the process of moving relevant files from his old laptop to the new one, he cleaned up and deleted several files and folders, including deleting the spreadsheet with the performance logs for his team in Fiscal Year 2023. (Ex. C to Reply). This was done because Oracle had undergone a significant reorganization in June 2023 and Mr. Miller only retained two of his previous ASR's, so he did not see the need to keep the old performance logs at that time. *Id*. Further, the reason the performance logs were able to be produced with regard to Ms. Eleazer is because Mr. Miller had previously shared them with Human Resources during the Performance Improvement Plan process. *Id*.

**II.     There is no evidence that the underlying performance numbers upon which Plaintiff's termination was based were manipulated in any way by Oracle.**

As discussed above, the data relied on by Oracle in determining Plaintiff's performance demonstrates that Plaintiff ranked last on her team in sales attainment and pipeline generation for Fiscal Year 2023, and despite Plaintiff's subject belief otherwise, there is no evidence that these performance numbers were "manipulated" in any way. (Motion, Ex. A ¶ 14). More specifically, there is no evidence that the sale that Ms. Eleazer did not receive credit for following her termination, and which Ms. Eleazer exclusively relies upon in her Response as the basis for her claim that Oracle "manipulated" her sales numbers and goals, would have made any impact on the decision to terminate her employment. As stated above, Mr. Miller and Ms. Levitt both testified that the additional sale would not have had a meaningful enough impact on her numbers to make a difference in their decision to terminate Ms. Eleazer. (Ex. A to Reply at 63:19-64:4; Ex. B to Reply at 112:12-113:7). This is because the decision to terminate Ms. Eleazer was based not on

6

just her poor overall sales attainment (which still would have been the second worst on her team even if she had received credit for the additional sale), but also included the undisputed fact that she had the worst pipeline generation numbers of anyone on the team, which indicated to her managers that she was not engaging in the necessary activities to adequately increase her sales attainment numbers.

Additionally, Plaintiff's attempt to point to cherry-picked Slack messages taken out of context between Ms. Levitt and Ms. Choi to support her unfounded claim of "manipulation" likewise fails. Response, Ex. 9. When the Slack messages are viewed in their entirety, they undisputedly show that Ms. Levitt was working with Ms. Choi (in her capacity as Ms. Levitt's designated HR partner) to address questions raised by Ms. Eleazer during their earlier call to discuss her performance and the PIP. (Ex. D to Reply). Moreover, these Slack messages further show that Ms. Levitt was having similar communications with Ms. Choi with regard to other employees under her supervision who were also having similar performance issues as Plaintiff. *Id*. Thus, rather than showing any kind of "scheme" of purported "manipulation", these Slack messages instead undisputedly establish that Ms. Levitt and Ms. Choi were addressing Plaintiff's performance issues in a similar manner as to how they were addressing the performance issues of other employees that were occurring during the same time period. (*Id*.) Finally, Plaintiff's assertion that "they later deleted these messages" — a clear attempt to insinuate that Ms. Levitt and Ms. Choi tried to hide these communications— is both categorically false and disingenuous. Response, p. 6. Ms. Levitt confirmed in her deposition testimony that she did not delete the messages, and rather the deletions occurred as a result of Oracle's system automatically deleting messages after a certain period of time. (Ex. A to Reply 19:22-20:5). This explanation is further

bolstered by the fact that all of the Slack messages between Ms. Levitt and Ms. Choi (including those involving employees other than Ms. Eleazer) show as also being deleted. (*Id.*)

Ms. Eleazer finally attempts to support her prima facie case with inadmissible hearsay "notes" from two field sales representatives with whom she worked. These "notes" are unsworn, unauthenticated, and constitute inadmissible hearsay. As such, they do not constitute competent summary judgment evidence and should not be considered by the Court. *Cruz v. Aramark Servs.*, 213 F. App. 329, 332 (5th Cir. 2007); *Damas v. Tex. Health Presbyterian Flower Mound*, 2022 U.S. Dist. LEXIS 48959, at *12 (E.D. Tex. 2022). Notwithstanding their inadmissibility, these notes also have no bearing on the primary basis for Ms. Eleazer's termination: her documented poor performance numbers.

### III. Ms. Eleazer Has Not Established Pretext.

Ms. Eleazer relies upon the same allegations for her argument of "pretext" as she does in her failed attempt to meet her prima facie case. Accordingly, Oracle will not re-state the same rebuttal set forth above, and instead asserts that the undisputed facts and arguments previously set forth in its Motion, as well as the previous sections of this Reply, apply equally to establish that Ms. Eleazer cannot show pretext. That being said, there is one particularly inflammatory and unfounded allegation in the portion of Plaintiff's Response regarding pretext that cannot be left unaddressed. Plaintiff asserts that Mr. Miller "claimed that she had field representatives doing all her work, consistent with the stereotype of Black people as 'lazy'." Response at pg. 9. There is no evidence that Mr. Miller ever claimed that Plaintiff "had field representatives doing all her work", no evidence that Mr. Miller ever referred to Plaintiff as being "lazy", and no evidence of any "stereotyping" of any kind by Mr. Miller. Rather, the undisputed evidence establishes that Plaintiff was counseled on multiple occasions by both Ms. Levitt and Mr. Miller that she was

failing to meet her sales and pipeline goals; she was failing to engage in expected sales generation activities; and she was exhibiting a lack of urgency in completing day-to-day tasks and assigned action items. (Motion its, Ex. A ¶ 10-12; Ex. B ¶ 10-11; Ex. B-2). There is simply no evidence whatsoever of racial "stereotyping" and Plaintiff's inflammatory and unsupported allegations to the contrary should be disregarded.

In short, while Ms. Eleazer may subjectively believe that Oracle reached an unjust or incorrect conclusion, she has not shown that Oracle acted with discriminatory intent in terminating her for its valid performance concerns. *Eiland v. San Jacinto Methodist Hosp.*, No. 4:12-CV-00192, 2013 U.S. Dist. LEXIS 117611, at *15 (S.D. Tex. 2013) (citing *Moreno v. Brownlee*, 85 F. App'x 23, 26 (5th Cir. 2004) ("a plaintiff's subjective belief, alone, is insufficient to establish a claim of discrimination")). Accordingly, Oracle is therefore entitled to summary judgment on Ms. Eleazer's discrimination and retaliation claims under Title VII and Chapter 21.

**IV.    Plaintiff Failed to Exhaust her Administrative Remedies Regarding her Retaliation Claim.**

In the Response, Plaintiff cites to notes regarding inquiry discussions with the EEOC investigator in support of her argument that one of her concerns was "retaliation" (as well as "sex discrimination"), and therefore the EEOC investigation should have reasonably been expected to include retaliation. Response, pp. 9-10. However, Plaintiff cites to no established precedent to support her argument that the EEOC should be reasonably expected to look into allegations contained in an *inquiry form* when such allegations were not included in the actual EEOC Charge. Notably, the Fifth Circuit has held that when a plaintiff alleges only one type of alleged discrimination in their EEOC Charge, but initially referenced additional allegations of other types of potential discrimination and/or retaliation in unverified EEOC intake questionnaires or inquiry forms, such additional allegations cannot be considered as part of the plaintiff's EEOC Charge

when determining if the plaintiff exhausted his or her administrative remedies. *Ernst v. Methodist Hospital System*, 1 F.4th 333, 338 (5th Cir. 2021) (Plaintiff failed to exhaust administrative remedies because intake questionnaire was not verified and employer did not receive notice of additional allegations during EEOC investigation); *McLeod v. Floor & Decor Outlets of America, Inc.*, No. 20-3134, 2021 U.S. Dist. LEXIS 114164, 2021 WL 2515750 (N.D. Tex. June 18, 2021) (Plaintiff's "unverified inquiry information form does not qualify as a charge and thus [Plaintiff] has failed to exhaust her administrative remedies regarding her Title VII retaliation claim"); *Foster v. Jayden Hosp. LLC*, No. 20-359-SDD-SDJ, 2021 U.S. Dist. LEXIS 191271, at *32 (M.D. La. 2021).

Here, Plaintiff's inquiry information form is not signed, dated or otherwise verified by Plaintiff. In addition, the only claim set forth in Ms. Eleazer's EEOC Charge was that she "believes she was discriminated against based on [her] race (black) in violation of the (sic) Title VII of the Civil Rights Act of 1964, as amended," and does not include any claim of retaliation. (Motion, Ex. D-2). Moreover, nowhere in the EEOC Charge does Ms. Eleazer allege that she made a report of discrimination or that she engaged in any other protected activity such that it could have been expected for the EEOC to investigate a retaliation claim in connection with the Charge. (*See id.*). Accordingly, Plaintiff's retaliation claim should be dismissed as a matter of law for failure to exhaust administrative remedies.

## CONCLUSION

Defendant Oracle America, Inc., respectfully requests that the Court grant its Motion for Summary Judgment, enter judgment in Oracle's favor, dismiss all of Plaintiff's claims with prejudice, award Oracle its costs, and grant Oracle any additional relief to which it may be justly entitled.

Respectfully submitted,

**CORNELL SMITH MIERL
BRUTOCAO BURTON, LLP**
1607 West Avenue
Austin, Texas 78701
Telephone:  (512) 328-1540
Telecopy:    (512) 328-1541

Edward M. "Ted" Smith
State Bar No. 00791682
tsmith@cornellsmith.com
Sarah E. Lancaster
State Bar No. 24092663
slancaster@cornellsmith.com

By: */s/ Edward M. "Ted" Smith*
     Edward M. "Ted" Smith

**ATTORNEYS FOR DEFENDANT
ORACLE AMERICA, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2025, I electronically filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system, and served a copy of the foregoing via electronic mail on the following counsel of record:

**Matt Bachop**
DEATS DURST & OWEN, PLLC
8140 N. Mopac Expy, Suite 4-250
Austin, Texas 78759
mbachop@ddollaw.com

*/s/ Edward M. "Ted" Smith*
Edward M. "Ted" Smith